UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 12, JANE DOE 13, AND JANE DOE 14 | § § § | |
| *Plaintiffs*, | § § | Cause No. <u>6:17-cv-00236</u> |
| | § | JURY TRIAL DEMANDED |
| vs. | § § | |
| BAYLOR UNIVERSITY | § § | |
| *Defendant*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT
AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

This case arises from Defendant's deliberately indifferent response to multiple events of student-on-student sexual assault and culture of sex-based harassment that exists both before and after the sexual assault. Investigation and media reports indicate these important cases are but a handful of many in what has been a historic and extensive history of abuse and conscious disregard by Defendant. Defendant's very policies and selective conduct code enforcement resulted in a discriminatory environment for female students. What is more, Defendant's failure to promptly and appropriately investigate and respond to student sexual assaults allowed a condition to be created that substantially increased Plaintiff's chances of being sexually assaulted, as well as others. Moreover, Defendant's failure to promptly and appropriately investigate and respond to these assaults furthered sexual harassment and a hostile environment, effectively denying Plaintiff, and other female students, access to educational opportunities. This action alleges violations of Title IX and, thereunder, Clery Act violations. This action alleges additional pendent claims arising under state law,

including breach of contract and negligence.  In support thereof, Plaintiffs would show the Court as follows:

## I.

## PARTIES

1.      Plaintiff Jane Doe 12[1] is a cisgender female.  At all material times Jane Doe 12 was living in the County of McLennan, State of Texas.  At the time of events complained of herein, Jane Doe 12 was a student attending Baylor University.

2.      Plaintiff Jane Doe 13 is a cisgender female.  At all material times Jane Doe 13 was living in the County of McLennan, State of Texas.  At the time of events complained of herein, Jane Doe 13 was a student attending Baylor University.

3.      Plaintiff Jane Doe 14 is a cisgender female.  At all material times Jane Doe 14 was living in the County of McLennan, State of Texas.  At the time of events complained of herein, Jane Doe 14 was a student attending Baylor University.

4.      Defendant, Baylor University, is an educational institution in the County of McLennan, State of Texas.  Baylor University may be served through its President, Linda Livingstone at

---

[1] "Jane Doe" has been substituted for Plaintiffs' names for all causes of action brought through this Complaint which would otherwise publish important privacy interests of all parties.  Plaintiffs fear for their personal safety, as well as that of their family and friends as a result of this Complaint.  On information and belief, others who have made similar charges against at this University and who have made their names publicly known in connection with these same allegations have received physical threats, have been stalked including being assaulted while on campus and/or have been subject to an internet social media harassment.  Fairly applying this concern, the Complaint also identifies the perpetrator as Assailants 13, et. seq.  Finally, the Complaint does not use the Plaintiffs' administrators' names but identifies them as "Administrator" or by their titles as opposed to naming the staff of Defendant University and the members of its Board of Regents as Defendants.

Pat Neff Hall, Suite 100, Waco, Texas 76798.  During all material times, Baylor University received federal funding for its academic programs and activities.

## II.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

6.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights. Various actions and/or inactions by Baylor employed law enforcement amount to action under the color of law and therefore jurisdiction and claim is asserted under this statute.

7.     Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.  This action is also brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

8.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including breach of contract and negligence.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside or resided in this district and the events giving rise to the claims occurred in this district.

### III.

### APPLICABLE LAW

10.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l(a), states that:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...."

11.    Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides:

> " ... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

12.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

13.     In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

14.     *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

    a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and
    b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

*Davis*, 526 U.S. at 1669-76.

15.     Title IX jurisprudence as well as Department of Education regulations have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school:

    "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical.  Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe.  For instance, a single instance of rape is sufficiently severe to create a hostile environment."

U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

16.     Regardless, in the circumstances giving rise to the claims of Plaintiff, and others, a significant history student of female student harassment, resulting from deliberate indifference, if not intent, has been allowed to continue at the Defendant University for many years.

17.     Texas law provides protections for students and requires the exercise of reasonable care on the part of the University.

18.     Texas law provides for the protection of invitees from foreseeable criminal harm.

19.     Texas law also provides for a cause of action of breach of contract.  Plaintiff has and continues to have an educational contract with the Defendant University that included agreements and duties to provide adequately for her safety, to adequately and in compliance with law report instance of sexual assault and/or harassment the breach of which cause the damages claimed herein.

## IV.

## FACTS

20.     For months now, the Defendant University has been the subject of numerous media reports concerning rampant sexual assault on campus, often perpetrated by athletes, including players on the football team.

21.     The Waco Tribune has reported a timeline of this unfortunate saga which, upon information and belief, sets forth important and relevant events.   *See* http://www.wacotrib.com/news/higher_education/timeline-baylor-sexual-assault-controversy/article_abf21ab8-2267-51bf-84d8-6268f4222af0.html (accessed August 16, 2017).

22.     Suffice it to say that the Defendant, its staff, and highest officers have permitted a campus condition rife with sexual assault and completely lacking the basic standards of support for victims as required by federal and state law.

23.    Information discovered to date also reveals that the University has maintained a set of policies, procedures and customs, not the least of which involve the student code of conduct, that itself, without a sexual assault, created a sexually discriminatory education environment.

24.    At all material times, the Defendant University was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.* for its activities including financial aid and research grants among other sources.

25.    The Defendant University implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

26.    The Defendant University is responsible for providing the security of its students and guests which it does through "Public Safety," in effect a private police force.

27.    The Defendant University is responsible for ensuring that all of its employees are properly trained and supervised to perform their jobs.

28.    The Defendant University is responsible for the acts and omissions of its employees, agents, part-time student workers and tenants.

29.    The Defendant University received reports from Plaintiff concerning the event of sexual abuse and the sexual harassment she experienced while at an academic activity at the Defendant University.

30.    The Defendant University failed to adequately investigate the events Plaintiff reported in violation of Title IX.

31.     The Defendant University failed to investigate the assault the Plaintiff endured of which Defendant had either actual or constructive notice at the time they happened.

32.     Upon information and belief, the Defendant University failed to report the criminal act involved in the report it received from the Plaintiff in violation of its obligations under the Clery Act.

33.      The Defendant University failed to report the criminal acts involving sexual assault reports involving other victims that it received in violation of its obligations under the Clery Act.

34.     Incredibly, the Defendant reported to the Department of Education zero (0) incidents of sexual assault from 2008-2011. *See* http://www.usnews.com/news/us/articles/2016-02-18/critics-challenge-baylor-claim-of-no-sex-offenses-in-4-years (accessed August 16, 2017)

## A.      COMMON ALLEGATIONS

35.     The Defendant University failed to provide a safe academic environment for Plaintiff; faced with the Plaintiff's and other student reports of rape, the Defendant University's response, and its officials' conduct, was such that future reasonable students in Plaintiff circumstance would be, and in fact were, chilled from reporting sexual harassment.

36.     The Defendant University employees, including high ranking officials, conspired amongst themselves, and with other University employees, with the common purpose of violating the Clery Act in relation to the reports of sexual assault that Plaintiff provided them within a timely manner.   Such actions deprived prospective students of meaningful information concerning conditions on campus.

37.     The extensive detail of the Plaintiff's report of sexual assault, as well as the numerous reports of others, to these administrators, all of whom were high-level, policy-setting employees of Defendant, did not cause any change in the sexually hostile environment at the University as is averred throughout this Complaint.

38.     The Defendant University employees, including high ranking officials, conspired amongst themselves, and with other University employees, with the common purpose of violating Plaintiff's rights under Title IX and the Clery Act including, but not limited to, violating her right to be informed that she could and should report the sexual assault allegations to the police and Defendant's duty to report the offense.

39.     The Defendant University employees took several overt acts in furtherance of their common goal, including misleading Plaintiff, concealing meaningful facts from Plaintiff, lying to Plaintiff, misrepresenting their actions to Plaintiff, failing to prosecute, investigate and report Plaintiff's claims, as well as the related crimes and generally failing to provide Plaintiff with a safe academic environment free from sexual harassment.

40.     At all times relevant to this Complaint, Defendant failed to protect Plaintiff, and others, as it negligently discharged its duty to provide safety to the students and guests of the University.

41.     What is more, the Defendant University, despite direction from the Department of Education and its legal requirements, did not have a Title IX coordinator until November, 2014.

42.     As a direct and proximate result of the harassing educational environment created by Defendant's deliberately indifferent response to the sexual assault and subsequent

harassment of Plaintiff, as well as violations of their state and federal legal rights, Plaintiff has suffered and continues to suffer untold psychological damage, profound emotional distress, permanent loss of standing in her community and damage to her reputation, and Plaintiff's future relationships have been negatively affected.

43.     Plaintiff has also been deprived of meaningful treatment, including medical and psychological support, as a result of Defendant's conduct and the resulting medical environment which they caused.

44.     Plaintiff has also been deprived of a normal college education due to Defendant's conduct and the resulting educational environment which they caused.

45.     Plaintiff has also been damaged by missed educational opportunities.  Also, her future earning capabilities have been damaged by Defendant's conduct and the resulting hostile educational environment which they caused.

**B.     ALLEGATIONS OF JANE DOE 12**

46.     Jane Doe 12 was enrolled at the University in 2014 as a journalism major.

47.     She received several scholarships and forms of financial aid assistance, both needs based and academic based.

48.     Jane Doe 12 resided off campus.

49.     Jane Doe 12 was sexually assaulted by Assailant 13 in March of 2016.

50.     Jane Doe 12 first reported to a friend and fellow student shortly after the assaulted.

51.     Jane Doe 12 reported the sexual assault approximately two weeks later to her professor.

52.   Unsure of what to do, Jane Doe 12's professor contacted the department head and ultimately an email was sent informing Title IX.

53.   Jane Doe 12 met with Title IX and was told that she had three options.  She could make a Title IX complaint, she could go through the police, or she could do a both.

54.   The Title IX office misinformed Jane Doe 12 and dissuaded her from reporting to the police.

55.   Jane Doe 12 was told that reporting to the police would mean a 5 year investigation that would span past her graduation and could possibly derail her plans to study abroad.  She was also told that if her assailant graduated prior to the conclusion of a police investigation, the University would not be able to punish him.

56.   Jane Doe 12 chose to go through Title IX only.

57.   After making this decision Jane Doe 12's case went untouched for approximately one week while the investigator assigned to her went on vacation.  After reaching out multiple times with no response, Jane Doe 12 contacted the Title IX coordinator directly and was told that her case would have to wait until the investigator returned.

58.   Jane Doe 12 was unable to be by herself for several months following her assault and experienced panic attacks and anxiety.  She attempted to avoid her assailant but fear of causally running into him made her anxious in public at all times.

59.   Jane Doe 12 requested academic support and counseling through Title IX.

60.   She was referred to an outside counselor that did not take her insurance.  Despite knowing that her insurance would not be accepted, the Title IX office encouraged her

to keep to appointment to see "if it worked out."  Unable to afford the appointment Jane Doe 12 had no choice but to cancel.

61.     Jane Doe 12 was not referred to the Advocacy center.

62.     The Title IX office did reach out to Jane Doe 12's professors for her, but ultimately the information communicated to her professors was inaccurate or required further explanation by Jane Doe 12 causing embarrassment and causing Jane Doe 12 to have to meet with her professors about her requests directly.

63.     Jane Doe 12's grades suffered causing her GPA to drop substantially and ultimately causing the loss of her scholarship.

64.     Prior to her assault, Jane Doe 12 made the Dean's List for her GPA.

65.     Jane Doe 12 has had to take incompletes, has failed courses and has had retake courses.  Her GPA and altered graduation date makes her ineligible for the study abroad program.

66.     Jane Doe 12 has informed Title IX of her struggles and has been encouraged to move on, push through, and to get over it.

67.     Assailant 13 was found responsible for sexually assaulting Jane Doe 12 but no meaningful action was taken.  The only sanction was a no contact order for the duration of his time at Baylor.

68.     The University acknowledged her rape but ignored the impact on her mental health and her ability to perform academically.

69.     Jane Doe 12 felt as if she would not be able to regain her ability to function on campus and appealed the Title IX decision.  Her appeal resulted in a 3 semester suspension.

70.     Since Jane Doe 12's case was closed she was informed that any assistance academically or otherwise would ultimately be up to her to arrange.

71.     The struggle to feel safe on campus has been one that Jane Doe 12 has fought for alone. Her inability to perform academically under the duress she experienced has caused setbacks financially, as to her graduation date and has eliminated her ability to participate in any study abroad program.

72.     Alone, Jane Doe 12 appealed the loss of her academic scholarship.  She was granted relief with strings based on her performance.  She has one semester to bring her GPA up to retain her scholarship.

73.     The Title IX office mis-informed Jane Doe 12 and concealed from Jane Doe 12 as to her options to further report the incident, accommodations she was entitled to under Title IX, and further investigatory actions that could be taken by the University.

74.     The lack of knowledgeable staff and inadequate Title IX office substantially impaired Jane Doe 12's higher education experience and has severely impaired her physical and mental health and well-being.

**C.     ALLEGATIONS OF JANE DOE 13**

75.     Jane Doe 13 was enrolled at the University in the Fall of 2011 as a psychology major and was the recipient of several scholarships.

76.     Jane Doe 13 was sexually assaulted by Assailant 14 in April of 2012.

77.     Assailant 14 was a student of the Defendant University.

78.     Jane Doe 13 reported the sexual assault in the Fall of 2012 to the Defendant University's Counseling Center.

79.   The Defendant's counselor mis-informed Jane Doe 13 and concealed from Jane Doe 1 her options to further report the incident, accommodations she was entitled to under Title IX, and further investigatory actions that could be taken by the University.

80.   Jane Doe 13 was placed in group counseling sessions where discussions of retaliation against reporters of sexual assault were common.  The failure of the University's Counselor to correct the narratives, using only "reassuring words" instead, caused Jane Doe 13 to fear further reporting her assault.

81.   The failure to inform Jane Doe 13 of her rights to report and options available caused her to endure a sexually harassing environment for years.

82.   In fact, Jane Doe 13 was assaulted by Assailant 15 in the Fall of 2012.

83.   Assailant 15 was a student of Baylor and member of the Baylor Rugby team.

84.   Jane Doe 13 reported her second assault to her counselor at the University's counseling center.

85.   Jane Doe 13 was manipulated into not pursuing her rights and was left to handle panic attacks, which she reported to the counseling center, every time she ran into her assailants on campus on her own.

86.   Jane Doe 13 did not find meaningful support as she struggled to function on campus and often found when she turned to the Counseling Center that they were too busy and did not have time to see her.  When she was turned away she would breakdown crying, on one instance a nurse found her in the hall in tears unable to move.

87.   On her own, Jane Doe 13 pursued limited academic accommodations through the Office of Access and Learning Accommodation.

88. The Office of Access and Learning Accommodation wrote to her professors explaining that she had "mental issues" and needed additional time for exams.

89. Struggling with classes, Jane Doe 13 did break down and speak to a professor about her assault and PTSD in 2014.

90. The Defendant's knowledge of Jane Doe 13's assault and failure to recognize or take action left Jane Doe 13 vulnerable and led her to endure a sexually harassing environment for years.

91. Jane Doe 13 struggled in her course work due to the heavy anxiety and depression she faced.

92. Jane Doe 13 ultimately failed a course and had to pay to take it again.

93. Jane Doe 13's GPA dropped almost a point following her assaults.

94. Despite reporting the second assault and her concerns regarding Assailant 16, Assailant 16 was allowed to follow her on a study abroad program hosted by the Defendant University where he assaulted her a second time.

95. The assaults caused, and continue to cause, Jane Doe 13 great mental distress that interferes with her daily routine.

96. Jane Doe 13 has experienced a set back from graduate school for a full year, lost eligibility for certain scholarships, and is still at risk for meeting eligibility requirements for certain master's program scholarships.

97. Jane Doe 13 was set to graduate with her Masters in August of this year.  As a result of her assault and the trauma she still experiences today, her life and career path have been altered.

98.   At the time of Jane Doe 13's assaults, the Defendant University had no Title IX coordinator to whom Jane Doe 13 could report.

99.   The culture created by the Defendant University's failure to respond to sexual assaults fostered the environment that led to Jane Doe 13's assaults.

100.  As a result of the Defendant University's actions and inactions, Jane Doe 13 has suffered severe physical and mental health impairments that continue today.

101.  The lack of knowledgeable staff and the non-existence of a Title IX office substantially impaired Jane Doe 13's higher education experience and has severely impaired her physical and mental health and well-being.

**ALLEGATIONS OF JANE DOE 14**

102.  Jane Doe 14 enrolled in Baylor in the Fall of 2014 as a child and family studies major.

103.  Jane Doe 14 dreamed of attending Baylor since she visited the campus as part of an outreach program that encourages students from low income families to attend college during seventh grade.

104.  Jane Doe 14 was assaulted in April of 2016 by Assailant 16 and Assailant 17.

105.  Assailant 16 was a student of Baylor and on the Baylor football team.

106.  Assailant 17 was also a student of Baylor and a member of the Baylor football team.

107.  The assault took place at student housing owned by Baylor.

108.  Jane Doe 14 reported her assault to Baylor's Counseling Center, to Baylor's Police Department and to the Title IX office.

109.    Jane Doe 14 was misled as to her options to further report the incident, accommodations she was entitled to under Title IX, and further investigatory actions that could be taken by the University.

110.    Jane Doe 14 was manipulated into not pursuing her rights.

111.    When Jane Doe 14 requested academic assistance and explained her assault to a professor, the professor declined accommodations and told her that despite bad things happening, life still goes on.

112.    Following her assault, Jane Doe 14 was placed on academic probation and was advised to take courses elsewhere.

113.    Jane Doe 14 is obligated on substantial student debt with little academic credit to show for it.

114.    The lack of knowledgeable staff and inadequate Title IX office substantially impaired Jane Doe 14's higher education experience and has significantly impaired her physical and mental health and well-being.

115.    After the assault, Baylor informed Jane Doe 14 that she had to go to another institution of higher education before she would be allowed to continue her course of study at Baylor.

116.    Then instead of providing Jane Doe 14 support, Baylor further retaliated against her by placing a hold on her when she attempted to re-enroll at Baylor this Fall.

117.    This hold against Jane Doe 14 was for alleged text messages that Jane Doe 14 exchanged with a Baylor student while Jane Doe 14 was not even enrolled at Baylor, but rather while she was at another school altogether.

118.   Baylor retaliated against Jane Doe 14 because she reported the sexual assault she was subjected to.

119.   Jane Doe 14, while attempting to re-enroll at Baylor, was first informed that a hold had been placed on her account by Baylor Judicial Affairs.

120.   Upon contacting Judicial Affairs, Jane Doe 14 was not told why there was a hold, but only that it was for conduct in March 2017, 5 months earlier at the other school.

121.   Judicial Affairs told Jane Doe 14 she would get a letter.

122.   On August 31, 2017, Jane Doe 14 was informed that Baylor had put the hold on Jane Doe 14's attempt to re-enroll because of the alleged conduct from Spring of 2017 at the different college, a college not part of the Baylor system.

123.   Prior to learning of the hold, Jane Doe 14 did not know she was being sanctioned for this alleged conduct that occurred elsewhere while she was not even attending Baylor.

124.   Prior to placing the hold on her re-enrollment, Baylor never told Jane Doe 14 of the allegations.

125.   Prior to giving official notice of charge to Jane Doe 14 on August 31th, Baylor never asked Jane Doe 14 for a response to the allegations.

126.   In notifying Jane Doe 14 at the last minute that she was being charged with misconduct under the Code of Conduct, Baylor informed her that her alleged actions were "in opposition to the Christian ideals [Baylor] strives to uphold."

127.   Baylor waited months after the alleged conduct to even inform Jane Doe 14 that her attempts to continue her education with Baylor would be adversely impacted.

128.   While ultimately allowing Jane Doe 14 to start classes, Baylor has now set a hearing, with a mere one week advance notice, and informed her she will waive her rights if she does not respond in that limited time.

129.   Despite the repeated obstacles Baylor continues to throw in front of Jane Doe 14, she continues to strive to every way she can to resume her education.

130.   Jane Doe 14 has struggled and continues to struggle mentally and physically.

131.   Jane Doe 14's academic performance significantly declined following her assault.

### V.

### CAUSES OF ACTION

### COUNT 1:

### VIOLATION OF TITLE IX

### 20 U.S.C. § 1681, *et seq.*

132.   The sex-based harassment articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

133.   The Defendant created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

a) Plaintiff was a member of a protected class;
b) Plaintiff was subjected to sexual harassment in the form of a sexual assault by another student;
c) Plaintiff was subjected to harassment based on her sex;

d) Plaintiff was subjected to policies, procedures and customs, not the least of which involved honor code enforcement, that were implemented in a sexually discriminatory manner; and

e) Plaintiff was subjected to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

134.  Defendant and its officials had actual knowledge of the sexual assault and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's attacker in a timely manner and consistent with federal and state law.

135.  The Defendant's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Defendant's education program in violation of Title IX.

136.  Defendant failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference towards Plaintiff.

137.  Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

138.  Defendant engaged in a pattern and practice of behavior designed to discourage and dissuade students and guest students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

139.  This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

140.    Plaintiff has suffered emotional distress and psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to her rights under Title IX.

141.    Each of the actions and inactions listed in Count 2 below are also incorporated herein under this claim.

## Count 2:

## TEXAS TORT LAW – Negligence

142.    Defendant owed Plaintiff a duty of reasonable care.

143.    Defendant breached these duties in multiple ways including:

   a.    Failing to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their higher education;
   b.    Failing to properly and timely report incidents of claims sexual assault;
   c.    Failing to provide adequate counseling and assistance to victims of sexual assault;
   d.    Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation;
   e.    Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;
   f.    Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events did not occur;
   g.    Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;
   h.    Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;
   i.    Tolerating sexual assailants on campus despite reports to the highest levels of their identities;
   j.    Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

k.      Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l.      Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m.      Failing to inform victims that they have the option of reporting the sexual assault to law enforcement authorities and that they will receive assistance from the institution in the process;

n.      Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault;

o.      Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

p.      Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q.      Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities;

r.      Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment;

s.      Failing to provide for meaningful assistance and accommodation for assault victims;

t.      Failing to ensure that student conduct regulations were enforced in a non-sexually discriminatory manner.

144.    The above enumerated breaches of duties were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

145.    These damages include, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; Plaintiff has suffered and continues to suffer spiritually. Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment

of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 3:

## TEXAS LAW - Breach of Contract

146. Plaintiff had valid enforceable contracts with Defendant as academic enrollees and also as residents living in on-campus housing.

147. Defendant breached this contract in failing to adequately warn Plaintiff of the dangerous sexual assault conditions on campus that has been allowed to metastasize in light of the failed reporting, cover up, and non-existent investigation procedures and student support activities.

148. Defendant also breached this contract by failing to provide an adequately safe living and educational environment for Plaintiff.

149. As a result of these breaches of contract, Plaintiff suffered damages which were foreseeable, and for which recovery is now requested.

## VI.

## REQUEST FOR PERMANENT INJUNCTION

150. Plaintiff seeks a mandatory injunction ordering the Defendant to refrain from unlawful discrimination and/or retaliation, ordering Defendant to undertake and rectify any and all Title IX violations and/or inequities, ordering Defendant and its athletic department to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of

sex by immediately ceasing deliberate indifference to sexual assaults; and cease interference with the disciplinary process in favor of students who were charged with sexual assault.

## VII.

## ATTORNEYS FEES

151.   Plaintiff requests award of her reasonable and necessary attorneys' fees for this action.  *See, e.g.*, 42 U.S.C. §§ 1983 & 1988.  Plaintiff also requests reasonable and necessary attorneys' fees for her breach of contract claim.

## VIII.

## JURY DEMAND

152.   Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.

## RELIEF REQUESTED

153.   For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant consistent with the relief requested herein, and for any and all relief Plaintiff may show she is entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, statutory interest and injunctive relief.

Dated this 31st day of August, 2017.

Respectfully submitted,

**BRAZIL & DUNN, L.L.P.**

 _/s/  Chad W. Dunn_
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
State Bar No. 06258010
Eleeza Johnson
State Bar No.
Andrea Mehta
State Bar No. 24078992
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS